UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIN MCDONALD<br><br>Plaintiff,<br><br>v.<br><br>ITERABLE, INC.<br><br>Defendant. | No. |

## COMPLAINT

Plaintiff, Erin McDonald ("McDonald" or "Plaintiff") through her undersigned counsel, for her Complaint against Defendant Iterable, Inc. ("Iterable" or "Defendant") alleges as follows:

## SUMMARY OF ACTION

1. Plaintiff Erin McDonald spent the last few years of her career as a Growth Account Executive selling and marketing Defendant Iterable's marketing technology software. Upon learning that she was pregnant, and despite her stellar track record, Iterable decided to fire Plaintiff for no justifiable reason, leaving Plaintiff without a job at twenty-seven weeks pregnant.

## THE PARTIES

2. Plaintiff is a resident of Cook County, State of Illinois.

3.. Defendant Iterable is a corporation formed under the laws of Delaware with its principal place of business in San Francisco, California.

## VENUE AND JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff brings this claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et

seq ("Title VII"), the Pregnancy Discrimination Act of 1978 42 U.S.C. § 2000(k) ("PDA")and supplemental jurisdiction over the claims brought under the Illinois Human Rights Act 775 ILCS 5/101 et seq. (the "IHRA"),under U.S.C. § 1367.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### McDonald's Employment with Iterable

7. Iterable is a marketing technology software company that offers marketing automation, SaaS, email marketing, and mobile marketing services to small, medium and Fortune 500 companies.

8. McDonald was hired as a Growth Account Executive for Defendant in January 2020.

9. McDonald's job was to drive the full sales cycle from prospecting through closing across various industries.

10. McDonald was an outstanding performer in her role, hitting her quota in her first fully ramped quarter of sales.

11. In 2021, after returning from maternity leave after the birth of her first child, McDonald was the best producer in her sales segment and the second highest earned in the company. McDonald closed $2.043 million on an $800,000 quota.

12.     In 2022, McDonald closed $211,000 of actual contract value getting to 23% of her quota attainment. Other male US Growth Account Executives did not perform as well as McDonald, including some that did not achieve any value of their quota attainment.

13.     In 2022, McDonald closed more deals and brought in more new logo business than three male Account Executives combined, two of which did not close any deals in 2022.

## McDonald's Request For Maternity Leave

14.     On January 4, 2023, McDonald told her manager, Justin Feinberg ("Feinberg"), that she was pregnant with her second child.

15.     Two weeks after informing Feinberg that she was pregnant, January 18, 2023, McDonald was placed on a Performance Improvement Plan ("PIP") by, with his reasoning being that he expected McDonald performance to be higher than others.

16.     McDonald was placed on the PIP despite two other males (who were at the company longer than the McDonald) performed well below McDonald in 2022.

17.     The PIP provided two specific areas of improvement and/or coaching documentation:

(a)     During performance reviews in September, we discussed current performance was inconsistent and a lack of pipeline, plus difficulty picking up some of our new playbooks, were contributing factors. These were our focus areas for H2.

(b)     On December 20, we discussed a lack of activity needed to build enough pipeline to hit a fully ramped quota. Your activity was the second lowest on the team.

18.     After being placed on the PIP, Feinberg sent a Slack message on December 20, 2022 to McDonald with a screenshot of a dashboard in Salesforce, allegedly indicating that

McDonald had the second lowest activity. After McDonald received this message, she significantly improved her activity performance to be a leader on the team.

19. During the January 18, 2023 meeting, Feinberg told McDonald that she was not the only account executive that would be placed on a PIP, including the male account executives that performed lower than McDonald.

20. During the remainder of the fiscal year, lower performing account executives, all male employees, were not placed on a PIP at that time.

21. The PIP contained sales and pipeline targets to meet by the end of 30 days, which would have been February 18, 2023.

22. However, Defendant created metrics that were nearly impossible to achieve. Defendant required McDonald to close $100,000 of revenue by January 31, 2023, despite the PIP lasting thirty days.

23. McDonald diligently worked to meet this nearly impossible benchmark, landing a deal with Sofi Stadium for $100,000. However, due to legal review of the agreement, the deal could not close by January 31, 2023.

24. McDonald, confused and suspicious of the timing of her placement on a PIP, reached out to Amanda Hilton, Defendant's Human Resources Partner. Ms. Hilton was out of the office so McDonald reached out to Ms. Hilton's manager, Kat Myers, who had no time to meet with McDonald.

25. McDonald, frustrated, reached out to Markita Jack, Head of Diversity, Equality and Inclusion, and spoke with her on January 23, 2023.

26. During this meeting, McDonald told Ms. Jack she informed Feinberg that she planned on taking four months of maternity leave offered by the Defendant and under FMLA in May 2023 and that she was hesitant to tell Feinberg being the only female on the team.

27. McDonald told Ms. Jack that during her January 18, 2023 meeting where Feinberg put McDonald on a PIP, Feinberg stated that he was going to put McDonald on a PIP in their one on one meeting on January 4, 2023.

28. Feinberg did not put her on a PIP during that January 4, 2023 meeting, and failed to do so for two weeks, after McDonald told Feinberg about her pregnancy and upcoming leave.

29. During this meeting with Ms. Jack, McDonald reiterated her need for FMLA paperwork as she would take FMLA in conjunction with the Defendant's maternity leave policy.

30. Ms. Jack relayed McDonald's statements to Ms. Hilton and Ms. Myers. A call between McDonald, Ms. Hilton and Ms. Myers was scheduled for January 30, 2023, thirteen days after the PIP was issued.

31. During this meeting, Ms. Hilton indicated that she did not know McDonald was pregnant when she was put on a PIP.

32. During this meeting, McDonald used Salesforce to show Ms. Hilton and Ms. Myers that she was not the lowest performer in her segment and that three other males, Andy Barrett, Ben DePerry and Mike Hill closed less business than McDonald.

33. However, Andy Barrett and Ben DePerry did not show up in these reports in Salesforce because they had $0 in sales, and thus had nothing to report.

34. Ms. Hilton and Ms. Myers told McDonald that they would take her complaints seriously and conduct an investigation.

35. Two days later, on February 2, 2023, Ms. Myers and Ms. Hilton informed McDonald that the investigation was complete and there were no discriminatory, retaliatory and/or harassing actions against her.

36. Ms. Myers and Ms. Hilton told McDonald that she would remain on her PIP.

37. McDonald sent Ms. Jack an email after her meeting with Ms. Myers and Ms. Hilton conveying her concerns that the Defendant was not supporting her as an employee, was being told half-truths, and that she has closed more deals than the other three males in her growth segment combined.

38. McDonald told Ms. Jack that three other females that worked under Feinberg either quit or interviewed for a lateral position so not to be on his team.

39. Defendant condoned and allowed for Feinberg to treat females differently, establishing and allowing for this practice to continue during McDonald's employment with Defendant.

40. On February 2, 2023, Ms. Myers asked McDonald if she wanted to be offered a severance package in lieu of the PIP.

41. The next day, McDonald met with Ms. Myers and Ms. Hilton where she was offered a final separation agreement that covered two months' salary and one month of COBRA benefits.

42. On February 4, 2023, McDonald requested an updated severance package, as she believed that the package was insufficient and because she was discriminated against on the basis of her gender and pregnancy.

43. On February 6, 2023, McDonald informed Ms. Myers that she declined the offer and that she would continue to work in her current role with the Defendant.

44. On February 8, 2023, McDonald was terminated from her employment with Defendant for not meeting one of her key metrics in her PIP.

### Post-Termination

45. McDonald learned that the $100,000 deal with Sofi Stadium that she had worked on closed on February 10, 2023 and was given to a male account executive, Matt Flammini.

46. McDonald learned that another client, Penn Station, who had a written confirmation of a sale for the end of February 2023 or early March 2023 for $55,000 was given to a male account executive, Ben DePerry.

47. McDonald's other 2023 Quarter 1 pipeline deals were given to other account executives including one to another female, Ally Klimko (who quit on February 10, 2023), Matt Flammini and Ian Hunter. Two smaller deals were given to the only other female on the team, Christine Goel.

### Administrative Actions

50. McDonald filed a charge with the Illinois Department of Human Rights on February 27, 2023.

51. McDonald subsequently requested a Right to Sue Letter from the Illinois Department of Human Rights.

52. McDonald received an Order of Closure from the IDHR on June 27, 2023.

53. McDonald is received her Right to Sue Letter from the Equal Employment Opportunity Commission on August 22, 2023. (See Ex. A to Plaintiff's Complaint).

### COUNT I

### Title VII – Discrimination and Retaliation - Sex

54. McDonald hereby reincorporates and realleges Paragraphs 1 through 53 as fully set forth herein.

55. McDonald is a member of a protected class on the basis of her sex as she is a female.

56. During McDonald's employment, Defendant engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions of her employment including, but not limiting to, unwarranted discipline, placing her on a PIP, and termination.

57. Defendant's actions were taken with a willful and wanton disregard of McDonald's rights under Title VII.

58. As a direct and proximate result of Defendant's violation of McDonald's rights under Title VII, McDonald has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, emotional distress and other consequential damages.

## COUNT II

### Title VII and PDA – Discrimination and Retaliation - Pregnancy

59. McDonald hereby reincorporates and realleges Paragraphs 1 through 58 as fully set forth herein.

60. McDonald is a member of a protected class due to her pregnancy as she was pregnant during the events giving rise to this matter.

61. During McDonald's employment, Defendant engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions of her employment including, but not limiting to, unwarranted discipline, placing her on a PIP, and termination.

62. Defendant's actions were taken with a willful and wanton disregard of McDonald's rights under Title VII and the Pregnancy Discrimination Act.

63. As a direct and proximate result of Defendant's violation of McDonald's rights under Title VII, McDonald has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, emotional distress and other consequential damages.

## COUNT III

### IHRA - Discrimination and Retaliation - Sex

64. McDonald hereby reincorporates and realleges Paragraphs 1 through 63 as fully set forth herein.

65. McDonald is a member of a protected class on the basis of her sex as she is a female.

66. During McDonald's employment, Defendant engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions of her employment including, but not limiting to, unwarranted discipline, placing her on a PIP, and termination.

67. Defendant's actions were taken with a willful and wanton disregard of McDonald's rights under Title VII.

68. As a direct and proximate result of Defendant's violation of McDonald's rights under Title VII, McDonald has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, emotional distress and other consequential damages.

## COUNT IV

### IHRA – Discrimination and Retaliation - Pregnancy

69. McDonald hereby reincorporates and realleges Paragraphs 1 through 68 as fully set forth herein.

70. McDonald is a member of a protected class due to her pregnancy as she was pregnant during the events giving rise to this matter.

71. During McDonald's employment, Defendant engaged in unlawful discriminatory employment practices by discriminating against her with respect to the terms and conditions of her employment including, but not limiting to, unwarranted discipline, placing her on a PIP, and termination.

72. Defendant's actions were taken with a willful and wanton disregard of McDonald's rights under Title VII.

73. As a direct and proximate result of Defendant's violation of McDonald's rights under Title VII, McDonald has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, emotional distress and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Enter judgment in favor of McDonald and against Defendant for violation of McDonald's rights under Title VII and the IHRA.

B. Declare that the actions of the Defendant constituted unlawful discrimination.

C. Award McDonald compensatory damages including, but not limited to, lost wages and benefits in such amount as will reasonably compensate her for her losses, damages and emotional distress.

D. Award. McDonald punitive damages in such amount as the Court deems proper.

      E.      Award McDonald her costs, attorneys' fees and non-taxable expenses in this action.

      F.      Grant McDonald such other and further relief as the Court deems equitable and just.

      Respectfully submitted,

      /s/ Justin DeLuca
      Attorney for Plaintiff

Justin DeLuca (ARDC # 6308867)
ELLIS LEGAL, P.C.
200 W. Madison St. Suite 2670
Chicago, IL 60606
(312) 878-6130
jdeluca@ellislegal.com